# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RICHARD DEAN MEARS,

      Plaintiff,

v.                                  CIVIL ACTION NO. 2:08cv115
                                  (Judge Maxwell)

E.G. ESPARZA, et al.,

      Defendants,

## REPORT AND RECOMMENDATION

### I.  Procedural History

The *pro se* plaintiff, Richard Dean Mears,  initiated this case on November 20, 2008,  by filing a civil rights complaint against the above-named defendants pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and  authorized suits against federal employees in their individual capacities.  On November 21, 2008, the plaintiff was granted permission to proceed as a pauper.  The plaintiff paid his initial partial filing fee on December 8, 2008.

On April 16, 2009, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time.  Summonses were issued that same day.

On July 30, 2009, the defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment.  On July 30, 2009, the plaintiff filed a Motion/Notice to Amend Complaint and a Motion for Service of Summons. On August 17, 2009, the plaintiff filed a response in opposition to the defendants' Motion to Dismiss or, in the Alternative for Summary Judgment.  Accordingly, this case is before the undersigned for a report and recommendation on the defendants' Motion to Dismiss or, in the

Alternative, for Summary Judgment, as well as the plaintiff's pending motions.

## II.  The Complaint

The plaintiff's complaint is seventy-six pages long, names ten defendants, and includes an additional forty-six pages of exhibits.  The plaintiff repeats himself at various points in the complaint and includes factual statements which do not appear to be tied directly to his allegations.  However, a thorough reading of the complaint indicates that the plaintiff is making three separate allegations.  First, he alleges that defendants, and in particular, Robinson and Adams, racially discriminated against him by not allowing him to return to his position as law library clerk.  Second, the plaintiff alleges that defendants, and in particular  Lindsay and Johnson violated the Privacy Act by disclosing personal information about him contained in the BOP system of records to persons who were not authorized to possess such information.[1]  Finally, the plaintiff alleges that the defendants conspired to have his custody level raised and transferred to another institution "as a result of retaliation, Lindsay's breach of security and 'Privacy Act' violations." (Doc. 1, pg. 33).

## III.  Defendants' Motion to Dismiss or in the alternative, Motion for Summary Judgment

In support of their motions, the defendants allege:

1. The plaintiff's complaint must be dismissed for failure to state a claim of deprivation necessary to support a Bivens action;

2. The plaintiff's claims against defendants Esparza, Elza, Trybus, Kovcek, Lindsay and Little

---

[1]In addition, the plaintiff makes an off-hand statement that "the inmate who was involved found out that Plaintiff had made the complaint against Lindsay, and may have been directed by Lindsay to approach Plaintiff in the bathroom, where he punched Plaintiff several times." (Doc. 47-1, p. 7).  However, it is not clear that the plaintiff is alleging any constitution violation against defendant Lindsay with respect to this statement.

should be dismissed for failure to exhaust all available administrative remedies;

    3.  The plaintiff fails to establish staff retaliated against him;

    4.  The plaintiff fails to establish a claim of discrimination;

    5.  The plaintiff's Privacy Act claims must be dismissed; and

    6. The defendants are entitled to qualified immunity.

## IV.  Plaintiff's Response

In response to the defendants' Motion to Dismiss, or in the alternative, for Summary Judgment, the plaintiff acknowledges that one argument advanced by the defendants is purely a legal argument, and he appears to concede that they are not subject to liability as individuals under the Privacy Act. However, with respect to the remainder of the defendants' grounds for dismissal, the plaintiff argues that they are all fact specific and rely on extrinsic material, and therefore most be judged under the standard for summary judgment.  The plaintiff argues that summary judgment at this time would be grossly premature because he has not had the opportunity to engage in discovery.

## V.  Standard of Review

## A.  Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable."  Id.  Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id.

## B. <u>Summary Judgment</u>

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. liberty lobby, Inc.</u>, 477 U.S. 242, 248 *1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex</u> at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Electric Industrial Co. V. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. <u>Id</u>. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u> at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Id.</u> at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id</u>. "If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir.

1987). Such evidence must consist of facts which are material, meaning that they create fair doubt

rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

party." Matsushita at 587 (citation omitted).

## VI. Factual Background

The plaintiff currently is serving a sentence of 114 months imposed by the Middle District of

North Carolina on March 31, 2005, for Mail Fraud, Wire Fraud, and Transportation in Interstate

Commerce of Fraudulent Securities and Money in violation of 18 U.S.C. §§ 1341, 1343, and 2314

respectively. His projected release date is September 27, 2013, via Good Conduct Time, and upon

release, he will be subject to three years of supervision. (Doc. 46-2, p. 3). The plaintiff reported to FCI

Morgantown on June 20, 2005, and remained there until he was transferred to FCI Elkton on June 19,

2007. (Doc. 46-2, p. 1). FCI-Morgantown is a minimum security facility, whereas FCI Elkton is a low

security facility.[2]

While incarcerated at FCI Morgantown, the plaintiff was assigned to several work details and

was also unassigned at various times. Specifically, the plaintiff was a temporary UNICOR employee

from September 6, 2005, until September 25, 2005. Thereafter, the plaintiff was regular UNICOR

employee from September 25, 2005 until April 19, 2006. He was then placed in the Special Housing

Unit ("SHU") and was unassigned from April 19, 2006 until April 26, 2006. From May 16, 2006, until

June 6, 2006, he worked the second UNICOR shift from 12:15 p.m. to 3:30 p.m. From June 6, 2006,

---

[2]See www.bop.gov.

until October 19, 2006, he worked as a library clerk in the evenings and on weekends.[3]  He was again

placed in the SHU and was unassigned from October 19, 2006, until November 9, 2006.  Upon his

release from the SHU, the plaintiff was unassigned until he returned to work as a library clerk from

November 17, 2006, until February 11, 2007. From February 11, 2007, until February 17, 2007, the

plaintiff was a temporary UNICOR employee.  He was unassigned from February 17, 2007, through

March 6, 2007.  From March 6, 2007, until April 2, 2007, he worked the compound labor pool,  was

on convalesce from April 2, 2006, through April 6, 2007, and returned to the labor pool from April 6,

2007, until April 10, 2007.  The plaintiff was again confined to the SHU and unassigned from April 10,

2007, until his transfer to FCI Elkton on June 19, 2007. (Doc. 46-3, pp.8-9).

    In addition to the instant complaint, the plaintiff has filed five other actions with this court while

he was confined at FCI-Morgantown, The first, filed on December 5, 2005, was a Petition for

Mandamus seeking an order directing the defendants to provide him with his administrative remedies

and directing the defendants to employ a full time dentist or give him access to a local dentist to repair

his broken tooth.  The case was dismissed without prejudice on March 31, 2006, in keeping with his

Motion to Dismiss. (See 1:05cv105).  The second case, a Bivens complaint, was filed on February 10,

2006, and consolidated with similar complaints filed by fourteen other inmates at FCI Morgantown.

The plaintiffs asserted that their housing unit was without heat and that a federal memorandum had

been posted that limited the amount of personal property that an inmate was authorized to retain.  On

May 15, 2008, the Court adopted the Magistrate Judge's Report and Recommendation and dismissed

the plaintiffs' claim concerning the federal memorandum without prejudice for failure to exhaust

---

[3]The plaintiff maintains that UNICOR closed it's operation temporarily, and he sought
placement in the law library as a law clerk. (Doc. 1, p. 3).

administrative remedies, and dismissed with prejudice the plaintiffs' lack of heat claim. (See 3:05 v15). The third case, another Bivens complaint was filed on September 13, 2006, again seeking treatment for his chipped tooth. This case was dismissed without prejudice on December 4, 2006, for failure to prosecute. (See 3:06cv95). The fourth complaint was filed on May 12, 2007, and sought an injunctive order preventing the defendants from transferring him and an order directing that he be released from administrative detention immediately. The case was dismissed without prejudice on August 3, 2007, upon the plaintiff's motion to dismiss as moot. (See 3:07cv63). The fifth complaint was filed on October 1, 2007, pursuant to the Federal Tort Claims Act. On July 2, 2008, the Court adopted the Magistrate Judge's Report and Recommendation and dismissed the plaintiff's case as frivolous. On January 13, 2009, the plaintiff's appeal was dismissed by the Fourth Circuit for failure to prosecute. (See 3:07cv131).

## VII. ANALYSIS

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[4] and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See

---

[4] Porter v. Nussle, 534 U.S. 516, 524 (2002).

Porter v. Nussle, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford at 93-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 103.

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at FCI-Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

In their response, the defendants assert that the plaintiff's claims against defendants Esparza, Elza, Trybus, Kovscek, Lindsay, and Little should be dismissed for failure to exhaust all available

administrative remedies. In support of this assertion, the defendants have provided a Declaration from Kevin Littlejohn, a Legal Assistant at the Mid-Atlantic Regional Office of the BOP, together with a computer generated "sanitized" list of administrative remedies submitted by the plaintiff. The Declaration and attachment establish that between March 2006 and December 2007, the plaintiff has filed approximately forty administrative remedies. However, he exhausted only two - Administrative Remedy I.D. number 461391-A1, in which he complained of unprofessional conduct by a staff member at FCI Morgantown and Administrative Remedy I.D. number 461860-A1, in which he appealed the results of a disciplinary hearing.

In Administrative Remedy I.D. Number 461391-A1, the plaintiff notes that he is appealing the response provided him at the Regional Level regarding his allegation that defendant Johnson violated his constitutional rights by conspiring with other staff members to retaliate against him by having his custody level increased and transferred out of his region and by violating the Code of Professional Conduct and the Privacy Act by discussing personal issues of his with another inmate. In addition, the plaintiff complains that the regional office did not discuss his claim regarding numerous attempts to get defendant Turner to update his "IFRP", and which ultimately played a part in his custody level being raised. (Doc. 46-3, p. 1).

Not only does the plaintiff not mention defendants Esparza, Elza, Trybus, Kovscek, Lindsay or Little in his administrative remedy appeal, he has raised specific allegations against them in the complaint which are not included in the administrative appeal.[5] Accordingly, the plaintiff claims

---

[5]In his complaint, the plaintiff alleges that (1) defendants Esparza and Elza "neglect[ed] to prevent the conspiracy;" (2) defendant Kovcsek staged an investigation into defendant Lindsay's Privacy Act violations; (3) defendant Lindsay violated the Privacy Act by allowing an inmate to

against these six defendants should be dismissed without prejudice for failure to exhaust his administrative remedies as required by the PLRA.

## B. **Racial Discrimination**

As previously stated, the plaintiff alleges that defendants Adams and Robinson discriminated against him by failing to allow him to return to his position as an inmate clerk in the law library at FCI Morgantown. The plaintiff further alleges that their act of discrimination was based on race. Specifically, the plaintiff notes that when he was originally placed as a library clerk, the Education Supervisor was white and approved of his assignment. However, the plaintiff maintains that the successor Supervisor, Robinson, is a black male that wanted mostly black inmates working the library clerk position. In addition, the plaintiff alleges that defendant Adams treated inmates more favorably. In essence, therefore, he alleges that he was not given back his position because of his race.

The plaintiff has no constitutional right to a job while incarcerated because a federal prisoner has no property or liberty interest to a job in prison. See Garza v. Miller, 638 F.2d 480 (1982). However, if a prison program is offered, no prisoner may be treated differently in terms of access to that program on the basis of his or her race or national origin, because "the Constitution prohibits prison supervisors from using race as a factor in determining which prisoners can participate in which programs." Brown v. Summer, 701 F. Supp. 762, 764 (D. Nev. 1988).

The defendants argue that the plaintiff's allegations of unequal treatment are not supported by the facts. Specifically, the defendants argue that the plaintiff's work history shows that he was

---

look at the records of other inmates and "may have' directed another inmate to assault him; (4) defendant Trybus failed to conduct adequate investigations into his allegations of staff misconduct; and (5) defendant Little requested to receive DHO reports that she always received as part of her duties as Case Manager.

employed while at FCI Morgantown except for brief periods when he was usually housed in the SHU. Moreover, the defendants contend that the plaintiff has failed to provide any evidence that he was treated differently that another similarly situated inmate based on race, arguing that mere assertions from other inmates that Robinson and/or Adams favored black inmates or wanted to have mostly black inmate in the law library does not amount to proof of unequal treatment.

The record before the Court establishes that the plaintiff was incarcerated at FCI Morgantown from June 20, 2005, until June 19, 2007, almost exactly a two year period. He was first assigned a work detail on August 21, 2005, when he was placed in the compound labor pool for two days. He then worked as an orderly for two days, before being assigned to UNICOR from September 6, 2006, until April 19, 2006, when he was placed in the SHU for one week. Upon his release from the SHU, the plaintiff was again assigned to UNICOR April 26, 2006, until June 6, 2006. He was then assigned as a library clerk from June 6, 2006, until October 19, 2006, when he was again placed in the SHU . On November 16, 2006, six days after he was released from the SHU, he was again assigned as a library clerk until February 11, 2007. From February 11, 2007, until February 17, 2007, he was a temporary UNICOR worker, was unassigned until March 6, 2007, and then, except for a four day period when he was on convalesce he worked the labor pool until he was placed in the SHU on April 10, 2007, until he was transferred to FCI Elkins on June 26, 2007.

Therefore, the defendants are accurate that the plaintiff was employed during his incarceration at FCI Morgantown except for brief periods. However, the plaintiff is not alleging that he was denied employment but rather that he was denied specific employment because he is white, and the Education Supervisor, who was black, wanted back inmates working in the library. As previously noted, "the Constitution prohibits prison supervisors from using race as a factor in determining which prisoners can

participate in which programs." <u>Brown</u> <u>supra</u>. . Clearly, the complaint, viewed in the light most favorable to the plaintiff is sufficient to survive the defendant's motion to dismiss. It gives the defendants' fair notice of his claims, and the grounds upon which it rests.

Furthermore, with respect to the defendants' motion for summary judgment, it is clear that there are genuine issues as to materials facts, such that a grant of summary judgment at this early stage in the proceedings would be inappropriate. The defendants argue simply that the plaintiff has made conclusory allegations and has failed to present any credible evidence to show that he has suffered an equal protection violation due to the actions of Adams or Robinson or that any actions they took were based on the plaintiff's race. However, because discovery has not yet been authorized in this matter, any evidence that would either support or refute the plaintiff's allegation would more than likely be in the defendant's possession. Furthermore, because the plaintiff is no longer housed at FCI Morgantown, he could not even attempt to gather evidence to support his claim. Accordingly, the undersigned recommends that the defendant's Motion to Dismiss, or, in the alternative, for Summary Judgment be denied with respect to the plaintiff's equal protection claim, and that a scheduling order be entered.

## C. **Retaliation**

In order to sustain a claim based on retaliation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." <u>Adams v. Rice</u>, 40 Fl3d 72, 75 (4th Cir. 1994). Therefore, "in forma pauperis plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked conclusory allegations of reprisal to survive [§ 1915(e)(2)(B)]." <u>Id</u>. Furthermore, claims of retaliation are treated with skepticism in the prison context. <u>Cochran v. Morris</u>, 73 F.3d 1310, 1317 (4th Cir. 1996).

In his complaint, the plaintiff points to various actions by the defendants as evidence of retaliation. First, he alleges that after he filed a formal complaint under the Administrative Remedy Procedures Act complaining of racial discrimination against defendants Robinson and Adams, he was placed in the  SHU for an investigation for being an "alleged racial threat to the security of the institution."  In addition, the plaintiff alleges that as a result of his filing the racial discrimination complaint and the complaint against defendant Lindsay for breaching security and violating the Privacy Act, the remaining defendants began to conspire with other staff members to have him placed in the SHU and transferred from the facility to cover up their actions.

It is clear from the documentary evidence supplied by the defendants that the plaintiff received two incident reports in 2007, after he was transferred from his position as a library clerk to UNICOR.  The first, dated April 12, 2007, involved possessing unauthorized items, and in point of fact, the plaintiff admitted to possessing another inmate's legal materials.  The plaintiff was sanctioned with ten days disciplinary segregation, suspended for 180 days pending clear conduct, and loss of job assignment for ninety days, which at that time was the labor pool.

On May 16, 2007, FCI Morgantown submitted the plaintiff for a transfer.  As a result of the 300 level Discipline Report for Possession of Unauthorized Items on May 9, 2007, his Custody score was lowered to +15, and his Security score was increased to +12, resulting in a change in his security level from MINIMUM to LOW. (Doc. 46-4).  Therefore, his resulting transfer from FCI Morgantown, a minimum security facility to FCI Elkton, a low security facility was the direct result of the plaintiff's admitted violation of BOP regulations and is not evidence of retaliation.

Moreover, while a federal prisoner may bring a <u>Bivens</u> action challenging the conditions of his

confinement, he must allege and the deprivation of a constitutional right. Although the plaintiff does not state as such with specificity, it appears that he may be challenging the conditions of his confinement in a minimum security facility versus a low security facility. However, 18 U.S.C. §3621(b) provides that "[the Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate..." Furthermore, the transfer of a convicted and sentenced inmate is within the sound discretion of the Bureau of Prisons. Meachum v. Fano, 427 U.S. 215 (1976). Accordingly, the plaintiff does not possess a constitutional right to be confined to a particular facility, and his transfer to FCI Elkton does not state a claim of deprivation necessary to support a Bivens action. Therefore, the plaintiff's complaint as it relates to retaliation and transfer should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### D. **Privacy Act**

The plaintiff alleged in his complaint that defendants Johnson and Lindsay violated his rights under the Privacy Act. Specifically, the plaintiff alleges that defendant Lindsay allowed "another inmate to read documents in other inmates' Central Files. (Doc. 1, p. 16), and defendant Johnson discussed information about him with another inmate. (Doc. 1, p. 34).

By enacting 5 U.S.C. 552 a(g) of the Privacy Act, the United States consented to be sued in situations where that provision applies. However, the Privacy Act does not afford an individual a right to sue any defendant with respect to information contained in the BOP's Inmate Central record

System because a federal regulation, which has the force of law, expressly exempts the BOP's Inmate Central Record System from suit under 552 a(g).  See 28 C.F.R. § 16.97 (a)(4) (exempting the Inmate Central Record System from the provisions of 5 U.S.C. § 552 a(g) among other provisions of the Privacy Act).  Accordingly, the Privacy Act does not afford the plaintiff a right of action either against the BOP, as a federal agency, or against any individuals with respect to these records.  See Ramirez v. Dep't of Justice, 594 F.Supp.2d 58 (D.D.C. 2009)(explaining that the Privacy Act authorizes suits against agencies of the federal government only, and not against any officers or employees of the agency.).  Accordingly, the plaintiff's claims against defendants Johnson and Lindsay for violations of the Privacy Act are due to be dismissed, and the plaintiff appears to concede this point in his response.

**E. Qualified Immunity**

Qualified immunity is an affirmative defense.  Bryant v. Muth, 994 F. 2d 1082, 1086  (4th Cir.), cert. denied, 510 U.S. 996 (1993). With regard to qualified immunity, the United States Supreme Court has provided that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitgerald, 457 U.S. 800, 818 (1982); Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992).   Discretionary functions include actions that were "undertaken pursuant to the performance of [the defendant's] duties and [were] within the scope of his authority."  Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994). For example, the serving of an arrest warrant is a discretionary function. See Miceli v. Apuzzo, 1999 WL 33117077 (D. Me. 1999).

To determine whether qualified immunity exists, the court must first determine whether a

constitutional or statutory right was deprived, then determine whether the right was clearly established at the time of the violation and whether a reasonable person in the defendant's position would have understood that his actions violated that right. <u>Saucier v. Katz</u>, 533 U.S. 194 (2001); <u>Doe v. Broderick</u>, 225 F. 3d 440, 454-455 (4th Cir. 2000). "Clearly established" does not refer to a general principle of law. <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987). Instead, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." <u>Id.</u> at 640 (internal citations omitted). Further, the defendants' actions as alleged in the complaint are examined for "objective legal reasonableness." <u>Behrens v. Pelletier</u>, 516 U.S. 299, 309 (1996).

While decisions regarding inmate job assignments are the type of day-to-day judgments that rest firmly in the discretion of prison officials, that discretion is tempered by the plaintiff's firmly established right to qual protection. Taken in a light most favorable to the plaintiff, the defendants are not entitled to qualified immunity because a reasonable BOP official would recognize that denying the plaintiff a particular job assignment based on race, is a violation of the Constitution.[6]

## F. **Plaintiff's Motion to Amend Complaint**

Rule 15(a) of the Federal Rules of Civil Procedure permit a party to amend its pleading once as a matter of course before being served with a responsive pleading. Here, no responsive pleading

---

[6]Although the defendants argue they made decisions regarding the plaintiff's programming and institutional needs based on established BOP policy and procedures, they point to no particular policy or procedure for an explanation of why the plaintiff was not returned to his position in the library.

was filed,[7] and therefore, the plaintiff "motion" to amend his complaint must be granted as a matter of right.

In his amended complaint, the plaintiff seeks to add two additional defendants, Ronald W. Riker and Pamela Steiner, but does not seek to makes additional allegations against the original ten defendants. According to the plaintiff, Ronald Riker holds the position of Section Chief of the Bureau of Prison's designation and Sentence Computation Center in Grand Prairie, Texas. The plaintiff alleges that from March 31, 2009, to May 16, 2009, defendant Riker joined the conspiracy to deprive him of his equal protection and due process rights, specifically with regard to racial discrimination, privacy rights and retaliation. Pamela Steiner appears to have been the plaintiff's Case Manager at FCI Elkton. The plaintiff alleges that defendant Steiner placed a "greater security management variable ["MGVT"] on him based on the existence of four unserved warrants alleging that he had passed worthless checks in Forsyth County, North Carolina. The plaintiff further alleges that on the date that defendant Steiner applied the "greater security" MGTV, she knew that she had no basis for doing so because she had received notification that the warrants had been dismissed.

For a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied. "First, the exercise of jurisdiction must be authorized by the long-arm

---

[7]The phrase "responsive pleading" refers to the pleadings listed in Rule 7(a), that is, a complaint, an answer to a complaint, an answer to a counterclaim designated as a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and if the court orders one, a reply to an answer. First Federal Sav. And Loan ass'n of Fayetteville v. Federal Home Loan Bank Bd., 426 F.Supp. 454 (W.D. Ark. 1977). Therefore, motions to dismiss and motions for summary judgment do not constitute "responsive pleadings," and therefore, do not preclude the plaintiff from amending his complaint as a matter of course. Manning v. Greenville memorial Hospital, 470 F.Supp. 662 (E.D. Va. 1979); Sohns v. Dahl, 392 F.Supp. 1208 (W.D. Va. 1975).

statute of the forum state, and second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." <u>Christian Sci. Bd. Of Dirs. Of the First Church of Christ v. Nolan</u>, 259 F.3d 209, 215 (4th Cir. 2001). The West Virginia long-arm statute is contained in W.Va. Code §56-3-33(a).[8]

The Southern District of West Virginia has succinctly stated as follows regarding personal jurisdiction:

---

[8]This section provides as follows:

(a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of the subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

(1) Transacting any business in this state;
(2) Contracting to supply services or things in this state;
(3) Causing tortious injury by an act or omission in this state;
(4)Causing tortious injury outside this state if he or she regularly does or solicits business, or engages in any persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state; Provided, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Having an interest in, using or possessing real property in this state; or
(7)Contracting to insure any person, property or risk located within this state at the time of contracting.

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivision (1) through (7), subsection (a) of this section may be asserted against him or her.

"[b]ecause the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary...to go through the normal two-step formula for determining the existence of personal jurisdiction.  Rather the statutory inquiry necessarily merges with the Constitutional inquiry.  In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997).

To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interest here would not "Offend traditional notions of fair play and substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).  Those minimum contacts necessary to confer jurisdiction are limited to those activities by which a person "purposely avails itself of the privilege of conducting activities within the forum state."Hanson v. Denckla, 357 U.S. 235, 253, 78 S,Ct. 1228, 2 L.Ed.2d 1283 (1958)see also In re Celotex, 124 F.3d at 628 (the minimum contacts must be "purposeful").  This occurs where the contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed..2d 528 (1985)(emphasis in original), or where the defendant's efforts are "purposefully directed" at the state. Id. at 476, 105 S.Ct. 2174.

Vass v. Volva Trucks North America, Inc., 304 F. Supp.2d 851, 854 (S.D. W.Va. 2004).

With regard to the actions of defendants Riker and Steiner, the plaintiff has failed to assert any contact by these defendants with the State of West Virginia, much less the minimum contact necessary to satisfy the Due Process Clause.  Thus, based on the information contained in the Amended Complaint, the Court cannot exercise personal jurisdiction over these individuals as any action that took place appears not to have occurred anywhere in West Virginia, and there is no indication that these defendants had any contact with the State of West Virginia.

## VI.  RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that:

(1) the plaintiff Motion to Amend Complaint (Doc. 47) be **GRANTED**;

(1) the defendants' Motion to Dismiss, on in the Alternative, for Summary Judgment (Doc. 45) be **GRANTED** with respect to the plaintiff's claims regarding retaliation and the Privacy Act but be

**DENIED** with respect the plaintiff's claim of racial discrimination and  the defendants' claim to

20

qualified immunity;

(2) the plaintiff's amended complaint as it relates to defendants Esparza, Elza, Trybus, Kovscek, Lindsay, and Little be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies;

(3) the plaintiff's amended complaint be **DISMISSED WITH PREJUDICE** against defendants Riker and Steiner for lack of personal jurisdiction;

(4) the plaintiff's Motion for Service (Doc. 49) on the two new defendants be **DENIED AS MOOT**;

(5) the plaintiff's Motion for Procedural Order Respecting Motions filed Pursuant to Rule 6(b) of the Federal Rules of Civil Procedure (Doc. 44) be **DENIED;**

(6) the Court issue a scheduling Order to address the plaintiff's allegation of racial discrimination; and

(7) the plaintiff's Motion for Scheduling Conference (Doc. 56) be **DENIED AS MOOT** in light of the undersigned's Report and Recommendation.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Court. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727

F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

      The Clerk of the Court is directed to mail a copy of  of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.  The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: 1-11-10

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE