# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RICHARD DEAN MEARS,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　**CIVIL ACTION NO. 2:08cv115**
　　　　　　　　　　　　　　　　　　　　　　(**Judge Bailey**)

**KENNETH ADAMS,**
**MR. ROBINSON**

    **Defendants,**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff, Richard Dean Mears, initiated this case on November 20, 2008, by filing a civil rights complaint against the above-named defendants[1] pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), seeking damages in the amount of $160,000 from each defendant. In its February 23, 2010, Order, the Court dismissed all of the plaintiff's claims[2] except for his claim of racial discrimination against defendants Adams and Robinson. On March 8, 2010, a Discovery and Dispositive Motions Scheduling Order was entered. On August 1, 2010, the defendants filed a Renewed Motion to Dismiss or for Summary Judgment with a supporting Memorandum. On September 7, 2010, a <u>Roseboro</u> Notice was issued, and on September

---

[1] In his complaint, the plaintiff named as defendants: E.G. Esparza, Acting Warden; Mr. Elza, Captain; Robert Trybus, SIS Lieutenant Tech.; Ms. Johnson, Lieutenant; Kenneth Adams, Unit Manager; Mr. Robinson, Education Supervisor; James Turner, Counselor; Lori Lindsay, Case Manager; and Lisa Little, Case Manager.

[2] The Court dismissed the plaintiff's claims alleging violation of the Privacy Act and conspiracy to have his custody level raised and a transfer to another institution.

20, 2010, the plaintiff filed a Response in Opposition.  On September 20, 2010, the defendants filed a Reply to the Response.  Finally, on March 21, 2011, the plaintiff filed a Supplemental Response to the pending Motion to Dismiss or for Summary Judgment.

## II. Factual Background

The plaintiff currently is serving a sentence of 114 months imposed by the Middle District of North Carolina on March 31, 2005, for Mail Fraud, Wire Fraud, and Transportation in Interstate Commerce of Fraudulent Securities and Money in violation of 18 U.S.C. §§ 1341, 1343, and 2314 respectively.  His projected release date is September 27, 2013, via Good Conduct Time, and upon release, he will be subject to three years of supervision.  (Doc. 46-2, p. 3). The plaintiff reported to FCI Morgantown on June 20, 2005, and remained there until he was transferred to FCI Elkton on June 19, 2007. (Doc. 46-2, p. 1).  Sometime between February 11, 2011, and March 7, 2011, the plaintiff was transferred to FCI La Tuna, which is located on the border of Texas and New Mexico.  FCI-Morgantown is a minimum security facility, and FCI Elkton and FCI La Tuna are both low security facilities.[3]

## III. The Plaintiff's Claim of Racial Discrimination

The plaintiff claims that the defendants discriminated against him by failing to allow him to return to his position as a clerk in the inmate law library at FCI Morgantown after he withdrew from his UNICOR position on February 16, 2007. The plaintiff also appears to claim that his transfer from law clerk to UNICOR was racially motivated.  To support his claim of discrimination based on race, the plaintiff alleges that the Education Supervisor, who originally approved his assignment to the law

---

[3]See www.bop.gov.

2

library, was white. Following her transfer to another institution, defendant Robinson, a black male became the Education Supervisor. (Doc. 1, p. 3). The plaintiff alleges that he was informed by "white and black inmates that defendant Robinson wanted to have mostly black inmates working in the 'Law Library Clerk' position," and that he also had been informed by "black and white inmates that defendant Adams[4] treated black inmates more favorab[ly]." (Doc. 1, p. 5).

## IV. Defendants' Renewed Motion to Dismiss or for Summary Judgment

In support of their motions, the defendants allege:

1. There is no evidence that the plaintiff was treated differently due to his race;

2. The plaintiff's work history demonstrates that his job assignments were made in accordance with prison procedures;

3. The plaintiff has failed to present any evidence of purposeful discrimination; and

4. An examination of prison employment records shows that white inmates were assigned to the law library proportionately to the prison population.

## V. Plaintiff's Response

In response to the defendants' renewed Motions to Dismiss or for Summary Judgment, the plaintiff notes his opinion that the facts, evidence, and his witnesses will satisfy the requisite showing of unequal treatment as a result of purposeful discrimination by defendants Adams and Robinson in satisfaction of the standard set forth in Veney v. Wyche, 293 F.3d 726 (4th Cir. 2002). Moreover, the plaintiff argues that he has alleged facts sufficient to overcome the presumption of reasonableness applied to prison policies and that the unequal treatment by defendants Adams and Robinson was the result of purposeful discrimination.

---

[4]According to the Complaint, Kenneth Adams was the plaintiff's Unit Manager. The Complaint indicates that defendant Adams is also black and alleges that he was good friends with defendant Robinson. (Doc 1, p. 5).

In addition, much of the plaintiff's response is dedicated to refuting or questioning the exhibits tendered by the defendants. For instance, the plaintiff maintains that Attachment C, "Program Statement 5251.06," dated October 1, 2008, was implemented long after his departure from FCI Morgantown, and therefore, is not relevant to the circumstances surrounding the relevant time period of early 2007, through June of 2007. In addition, the plaintiff maintains that the policy actually in effect from the time of his designation to FCI Morgantown through the time he was transferred to FCI Elkton, provided that any time an inmate was placed in the SHU, away on a writ, or otherwise absent from work, the work detail that the inmate was assigned to was required to hold that inmate's job for thirty (30) days prior to removing that inmate from that specific work detail.[5] The plaintiff also alleges that Attachment C is not relevant to the issue of racial discrimination and is nothing more than cumulative documents intended to persuade the Court that the defendants complied with the general rules of inmate work. The plaintiff also challenges the defendants' Attachment F, "Demographic Characteristics ," which he maintains cannot be deemed credible because it indicates that Dominic A. Gutierrez was the warden at FCI Morgantown in April of 2007, when in fact, he was escorted off the premises in January or early February of 2007. Finally, the plaintiff argues that Attachment D cannot be considered credible or reliable because the documents contained therein reveal no names, no inmate register number, and do not even reveal that these documents are inmate work related.[6]

---

[5]The plaintiff does not augment this argument with reference to any work detail to which he was assigned. Moreover, it would appear that when he was placed in the SHU in April of 2006, he returned to UNICOR, and when he he was placed in the SHU from October to November 2006, he returned to his work as a library clerk.

[6]Attachments D and E were supplied by the defendants in an effort to demonstrate the ratioof black to white inmates working as law clerks at FCI Morgantown during the period the plaintiff complains he was deprived of that assignment on the basis of race. Pursuant to the undersigned's order dated February 9, 2011, those attachments were resubmitted so as to allow the

4

## VI. Defendants' Reply

With respect to Attachment C "Program Statement 5251.06," the defendants note that they cited the policy to help explain the purpose of the BOP's inmate work program which is contained in 28 C.F.R. § 545.20. The defendants acknowledge that the previous Inmate Work and Performance Pay Program Statement 5251.05, dated December 31, 1998, was rescinded with the adoption of 5251.06. However, the defendants argue that the revisions pertained only to a reduction in performance pay to maintenance pay level and removal from any assigned work detail outside the secure perimeter for inmates found to have committed a level 100 or 200 series drug or alcohol related prohibited act. Therefore, the defendants maintain that the revisions did not change the rest of the program statement or the portion which they cited in their Renewed Motion to Dismiss.

In addition, contrary to the plaintiff argument that once an inmate is placed in the SHU, his work department must hold his position for thirty days, the defendants point out that Program Statement 5251.05, which governed inmate work assignments, makes no provision for an inmate to be returned to his work assignment after being placed in the SHU or leaving the position for any reason. (Doc. 150-1). However, as noted by the defendants, an inmate employed in the Federal Prison Industries ("FPI," also referred to as "UNICOR") "...is in FPI work status...for the first thirty days in administrative detention." See 28 C.F.R. § 345.11. However, there is no such requirement to "hold" an inmate's non-UNICOR work assignment, and hence, there is no such policy with respect to the law library clerk position.

The defendants also note that where, as in the plaintiff's case, employment is lost due to a

---

plaintiff, and this Court, to match the two exhibits.

UNICOR factory shutting down, the inmate who lost his job as a result of the closing is placed at the top of the waiting list for the re-opening of a UNICOR factory. Accordingly, the plaintiff was at the top of the list when the UNICOR factory at FCI Morgantown reopened, and he was called to a position in UNICOR on February 11, 2007. While the plaintiff had the opportunity to request being taken off he waiting list, he never submitted such a request, and therefore, was automatically reassigned to UNICOR. The plaintiff did voluntarily withdraw from the UNICOR position in February 17, 2007. (Doc. 150-2).

In response to the plaintiff's assertion that Attachment G, "Demographic Characteristics" is not credible, the defendants note that they cannot see the relevance in the plaintiff's assertions regarding Warden Gutierrez. However, they note that Warden Gutierrez was the warden at FCI Morgantown from May 16, 2 004, through May 13, 2007 (Doc. 150-5), and therefore, nothing about his name appearing on the exhibit as warden renders it less than credible or reliable.

Finally, the defendants argue that the plaintiff's job placement and transfer to FCI Elkton are not related events, and his reference to the transfer is simply an attempt to muddy the waters. Moreover, to the extent that the plaintiff claims that his transfer demonstrates that defendant Adams discriminated against him on the basis of race, the defendants note that defendant Adams, as Unit Manager, did not have and does not have the authority to give an inmate a management variable.[7]

## VII. **Plaintiff's Supplemental Response**

In his supplemental response, the plaintiff continues to object to Attachments D and E.

---

[7]The plaintiff, through the three-year history of this case, has continually asserted that there were black inmates at FCI Morgantown with management variables that allowed them to be designated to FCI Morgantown despite greater security levels and asserts that these management variables were given by Defendant Adams.

Specifically, the plaintiff notes that Attachment D still does identify the various inmates by name or BOP number, and Attachment E does not distinguish whether the individual inmates were assigned to the law library or leisure library. Accordingly, the plaintiff argues that the attachments cannot be considered credible or reliable and could very well be inmates matched to work assignments for the purpose of defending this action. In addition, the plaintiff indicates that he does not recall and white inmate age 55, age 73, age 63, or age 54 that was assigned to the Law Library as a Clerk during the time frames in question. Finally, the plaintiff reiterates his claim that the facts, evidence, and his numerous witnesses will satisfy the requisite showing of unequal treatment as a result of purposeful discrimination by defendants Adams and Robinson.

## VII. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id.  Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

8

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only

9

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

**IX. Analysis**

This case has a long and complicated history. However, a review of the docket sheet, including the various Report and Recommendations and Orders entered by both the undersigned and the District Judge, establishes that the only issue left to be addressed is the plaintiff's allegation of racial discrimination with respect to his position as a Law Library Clerk at FCI Morgantown.

As noted in the undersigned's original Report and Recommendation (Doc. 63), the plaintiff has no constitutional right to a job while incarcerated because a federal prisoner has no property or liberty interest to a job in prison. See Garza v. Miller, 638 F.2d 480 (1982). However, if a prison program is offered, no prisoner may be treated differently in terms of access to that program on the basis of his or her race or national origin, because "the Constitution prohibits prison supervisors from using race as a factor in determining which prisoners can participate in which programs." Brown v. Summer, 701 F. Supp. 762, 764 (D. Nev. 1988). More recently, the Fourth Circuit has noted that while the equal protection clause protects prisoners from arbitrary racial discrimination, review of prison supervisory actions is weighed against the necessary withdrawal or limitation of many privileges and rights of prisoners. Morrison v. Garraghty, 239 F.3d 648 (4th Cir. 2001).

Providing a framework for analysis of an equal protection claim is the Fourth Circuit's opinion in Veney v. Wyche, 293 F.3d 726 (4th Cir. 2002). As the Court explained in it decision, the Equal Protection Clause prohibits a governmental decision maker from "...treating differently persons who are in all relevant requests alike. Veney, *quoting* Nordlinger f. Hahn, 505 U.S. 1, 10 (1992). To succeed in an equal protection claim, the plaintiff "...must first demonstrate that he has been treated

differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison, supra at 654. More specifically, "...to establish a violation of the Equal Protection Clause, [the plaintiff] must prove that a racially discriminatory intent or purpose was a factor is the decision of prison officials." Veney at 732.

The record before the Court establishes that the plaintiff was incarcerated at FCI Morgantown from June 20, 2005, until June 19, 2007, almost exactly a two year period. He was first assigned a work detail on August 21, 2005, when he was placed in the compound labor pool for two days. He then worked as an orderly for two days, before being assigned to UNICOR from September 6, 2006, until April 19, 2006, when he was placed in the SHU for one week. Upon his release from the SHU, the plaintiff was again assigned to UNICOR from April 26, 2006, until June 6, 2006.[8] He was then assigned as a library clerk from June 6, 2006, until October 19, 2006, when he was again placed in the SHU . On November 16, 2006, six days after he was released from the SHU, he was again assigned as a library clerk until February 11, 2007. From February 11, 2007, until February 17, 2007, he was a temporary UNICOR worker, was unassigned until March 6, 2007, and then, except for a four day period when he was on convalesce he worked the labor pool until he was placed in the SHU on April 10, 2007, and transferred to FCI Elkins on June 26, 2007.

The plaintiff alleges that defendant Robinson had him moved from the Law Library back to UNICOR solely based on his race. The plaintiff further alleges that defendant Robinson refused to rehire him in the Law Library, again because of his race. Finally, the plaintiff alleges that defendant Adams, his Unit Manager, was uncooperative and unconcerned with the situation, because he is also

---

[8]Apparently, UNICOR closed it's operation temporarily, and tthe plaintiff sought placement in the law library. (Doc. 47-1, p. 3

black and good friends with defendant Robinson. In their initial response to this allegation, the defendants argued that the plaintiff's work history showed that he was employed while at FCI Morgantown except for brief periods when he usually housed in the SHU. Moreover, the defendants contended that the plaintiff had failed to provide any evidence that he was treated differently than another similarly situated inmate based on race. Viewing the complaint in the light most favorable to the plaintiff, the undersigned concluded that the allegation was sufficient to survive the defendants' initial Motion to Dismiss or for Summary Judgment and recommended that the plaintiff's equal protection claim proceed with a scheduling Order. The district Court agreed.

Now, after the plaintiff has engaged in discovery including depositions by written question, interrogatories, and requests for production of documents, the substance of the plaintiff's claim of racial discrimination still lies with the assertion that he was told by various inmates, both black and white, that defendant Robinson wanted only black inmates working in the Law Library Clerk position, and defendant Adams treated black inmates more favorably. This anecdotal "evidence" is insufficient to defeat the defendant's Renewed Motion to Dismiss or for Summary Judgment in light of the supplemental information supplied in support of the Renewed Motion.

First, since 2003, the staff member responsible for accepting or denying an inmate's request to be assigned to the Law Library has been Patrick McMillen, Teacher. Mr. McMillen's collateral duties include Law Library Coordinator, Parenting Program, Family Enrichment Coordinator, and College Program Coordinator. As the Law Library Coordinator, Mr. McMillen, a white male, makes the decisions regarding whether an inmate is assigned to work as a Law Library Clerk at FCI

12

Morgantown.[9] (Doc. 135-1). Therefore, the plaintiff's claim that defendants Adams and Robinson were responsible for denying his request to work at the Law Library after he voluntarily left his UNICOR position is not supported by the evidence.

In addition, the evidence submitted by the defendants establishes that the plaintiff's job assignments were made in accordance with prison policy. First, when UNICOR reopened, he was reassigned from the Law Library back to UNICOR because he had not taken the affirmative steps necessary to have his name taken off the waiting list for reassignment. (Doc. 150-3). Therefore, there is no validity to the plaintiff's assertion that he was moved to UNICOR in a racially motivated manner. Moreover, the plaintiff's assertion that he was promised that he could return to his position as Law Library Clerk is also unsupported by the evidence. Program Statement 5251.05 makes no provision for an inmate to return to his work assignment after leaving for any reason. Furthermore, while 28 C.F.R. § 345.11 provides protection for UNICOR workers, there is requirement to hold an inmate's non-UNICOR assignment. Finally, Mr. McMillen notes in his Declaration that he "does not 'hold' positions for inmates regardless of the reason they leave their Law Library assignment." (Doc. 135-1, p. 2). Accordingly, because Mr. McMillen fills positions almost immediately after an inmate vacates a Law Library Clerk position (Doc. 135-1, p.2), it is reasonable assume that there was no Law Library Clerk opening when the plaintiff resigned his position with UNICOR six days after he was reassigned there.

---

[9] It is unclear why the defendants did not submit Mr. McMillen's Declaration in support of their original Motion for Summary Judgment. The undersigned can only surmise that there was a break down in communication between the staff at the BOP and the United States Attorney here in Wheeling, West Virginia. However, for what ever reason, the Court now has a Declaration from V. Patrick McMillen given under penalty of perjury.

Furthermore, the exhibits tendered by the defendants establish that white inmates were assigned to the Law Library in a number proportionate to their representation at FCI Morgantown. As evidenced by the exhibits, in March of 2007, 40.7% of the inmate population at FCI Morgantown was white, and 58.3% were black. In comparison, the racial breakdown of inmates assigned to the law library from February 2007 through April 2007 was 40% white and 60% black. While the plaintiff attacks the credibility of Attachments D and E, because identifying characteristics have been removed, and there is no guarantee that the Library Clerk positions were for the Legal Library, as opposed to the Leisure Library, the undersigned finds that the exhibits have been provided through an archived Inmate Performance Pay Records, and are credible.[10]

Finally, the undersigned notes that the plaintiff's continued reference to his transfer from FCI Morgantown to FCI Elkton, in an effort to establish racial discrimination, is not relevant to the only issue before this Court: whether the plaintiff was discriminated against with respect to his position as Law Library Clerk. However, even if the reference was relevant, it is clear that neither defendant Robinson nor Adams was responsible for that transfer. Throughout his original complaint and his responses to the Renewed Motion to Dismiss or for Summary Judgment, the plaintiff maintains that his transfer to FCI Elkton is evidence of racial discrimination by defendant Adams. In essence, the plaintiff alleges that if he had been a black inmate, defendant Adams would have had a management variable

---

[10] Although none of the identifying information that was deleted is information covered by the E-Government Act of 2002, the undersigned assumes that for security reasons, the BOP does not wish to provide identifying information to the plaintiff about other inmates, especially since many of those inmates have been released. In addition, the undersigned is not concerned that most of the inmates are no longer the responsibility of FCI Morgantown. What is important about Attachments D & E, is that together they demonstrate those inmates that were employed as Library Clerks at FCI Morgantown during the relevant time period and indicate how many were white and how many were black.

placed on him that would have allowed him to remain at FCI Morgantown despite his increased security level. However, defendant Adams does not have the authority to give an inmate a management variable. Pursuant to BOP policy, Program Statement 5100.08, Inmate Security Designation and Custody Classification: "A Management Variable is required when placement has been made and/or maintained at an institution level consistent with the inmate's scored security level. Application of a Management Variable requires review and approval by the DSCC Administrator...institution staff may only enter a Management Variable which the DSCC previously approved and entered as a management reason. Otherwise, the DSCC is the only office authorized to enter a variable." (Doc. 150-6, p. 42). Accordingly, it is clear that the plaintiff cannot establish that his transfer to FCI Elkton was incidental to any racial discrimination by defendant Adams.

In summary, the plaintiff has failed to present any credible evidence to show that he suffered an equal protection violation at the hands of either defendant Adams or Robinson. Conversely, the exhibits and attachments supplied by the defendants in support of their Renewed Motion to Dismiss or for Summary Judgment establish that the plaintiff's work assignments were based on BOP policy. **X,**

**Recommendation**

For the reasons set forth above, it is hereby RECOMMENDED that the defendants' Renewed Motion to Dismiss or for Summary Judgment (Doc. 136) be **GRANTED**; the plaintiff's Motion to Schedule Trial Date (Doc. 138) be **DENIED**; the claims against defendants Adams and Robinson be **DENIED and DISMISSED with PREJUDICE**; and this case be **CLOSED**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of such

objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.  28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of  of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.  The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: May 16, 2011

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE

16